Edward TUCK, Appellant,

v.

UNITED STATES, Appellee.

No. 81–1575.

District of Columbia Court of Appeals.

Argued May 19, 1983.

Decided May 24, 1984.

Charles W. Halleck, Washington, D.C., for appellant.

Paul L. Knight, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Michael W. Farrell, Judith Hetherton and G. William Currier, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee. John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, and Cary M. Feldman, Asst. U.S. Atty., Washington, D.C., also entered appearances for appellee.

Before MACK and PRYOR, Associate Judges, and GALLAGHER, Associate Judge, Retired.

MACK, Associate Judge:

A homo sapiens is entitled to own animals but is not entitled to torment or cruelly destroy them (despite the suggested one-hundred-and-one options for disposal of a carcass) [1]—at least not in the District of Columbia.[2] *See Tuck v. United States*, 467

1. *See* the tongue-in-cheek best selling edition of some years back—SIMON BOND, 101 USES FOR A DEAD CAT (Eyre Methuen Ltd., Gt. Brit. 1981).

2. D.C.Code § 22–801 provides:

Whoever overdrives, overloads, drives when overloaded, overworks, tortures, torments, deprives of necessary sustenance, cruelly beats, mutilates, or cruelly kills, or causes or procures to be so overdriven, overloaded, driven when overloaded, overworked, tortured, deprived of necessary sustenance, cruelly beaten, mutilated, or cruelly killed any animal, and whoever, having the charge or custody of any animal, either as owner or otherwise, inflicts unnecessary cruelty upon the same, or unnecessarily fails to provide the same with proper food, drink, shelter or protection from the weather, shall for every such offense be punished by imprisonment in jail not exceeding 1 year, or by fine not exceeding $250, or by both such fine and imprisonment.

A.2d 727 (D.C.1983). In this case, we have the difficult task of balancing a citizen's basic right to privacy against the necessity for police intrusion to thwart conduct which is threatening the life of animals in contravention of a legislative prohibition.

On September 3, 1981 a jury found appellant, Edward Tuck, guilty of one count of cruelty to animals in violation of D.C.Code § 22–801 (1981). The trial court sentenced him to pay a fine of $200 or serve 60 days incarceration, and placed him on probation for a period of one year, with a special condition of that probation being 200 hours of community service. On appeal, appellant alleges three grounds for reversal of his conviction. He claims that (1) the trial court erred in denying his motion to suppress testimony resulting from the warrantless seizure of an animal—a rabbit; (2) that D.C.Code § 22–801 is unconstitutionally overbroad and vague; and (3) that the trial court abused its discretion in denying his motion to dismiss based on the destruction of evidence. We have previously rejected a challenge to the constitutionality of the statute (see *Tuck v. United States, supra)* and we find appellant's other arguments to be without merit.

I

The chronology of events and the government's evidence at trial is briefly stated. Appellant is the proprietor of a pet store located at 704 7th Street, N.W. On July 16, 1980 Duncan Bright, a cruelty investigator for the Washington Humane Society, visited appellant's store in response to a citizen's complaint to the Humane Society. Bright, in turn, summoned the Metropolitan Police Department, and two officers responded—Sergeant William Boone and, ultimately, Officer Ethel Jones. There was testimony at trial that on this day, when the temperature reached the level of at least 103 degrees Fahrenheit, witnesses observed several suffering animals in the closed unventilated display window of appellant's store. Two of these animals—a puppy and a rabbit—appeared to be suffering directly from the extreme heat. Bright described the two animals as being sprawled out on the bottom of their small cages in a semi-dazed condition, panting and covered with heavy salivation.

Bright and the police officers entered appellant's store and asked appellant to remove the puppy from the display window. Appellant reluctantly complied and within moments the puppy perked up and became playful. Bright and Sergeant Boone then repeatedly asked appellant to remove the rabbit, which appeared to be suffering, more than the puppy had been, from the extreme heat, but appellant refused to do so. Finally, while Sergeant Boone restrained appellant, Bright entered the store window. Bright testified that a blast of hot air hit him when he opened the door to the window and that the chamber was as hot as a furnace. The rabbit was impounded and rushed to an animal clinic. A veterinarian, who examined the rabbit, testified at trial that she diagnosed the rabbit as suffering from heat stroke.[3] Following the examination and treatment of the rabbit, it was housed at the Humane Society's animal shelter pending disposition of a criminal charge against appellant.

Based on Bright's observations and the veterinarian's diagnosis, a warrant for appellant's arrest was issued on July 17, 1980. On July 22, 1980 appellant was arrested and charged with one count of cruelty to animals, to which he entered a plea of not guilty. Three days thereafter, on July 25, the rabbit, still housed at the Humane Society's shelter, was attacked by a larger rabbit. Due to the severity of its injuries, officials at the shelter found it necessary to destroy the rabbit. That same day, unaware of the rabbit's destruction, appellant filed a motion to suppress the rabbit and

---

**3.** The rabbit's body temperature registered as high as the thermometer was calibrated, 110 degrees Fahrenheit. The veterinarian testified that a rabbit's normal temperature ranges from 99.1 to 102.9 degrees Fahrenheit. The rabbit's temperature was lowered by immersion in cold water.

any evidence obtained from its examination. On October 22, 1980, after having learned of the rabbit's destruction, appellant filed a motion to dismiss the information for failure of the government to preserve critical evidence. On August 7, 1981 the trial court heard and denied appellant's motion to dismiss. The court found no bad faith or such a degree of negligence on the part of the government as to justify a dismissal of the action. On August 10, 1981 the trial court, on the basis of testimony by Officer Jones, denied appellant's motion to suppress. The court ruled that exigent circumstances justified the warrantless entry and seizure in question. It found that probable cause existed for the officers and the Humane Society representative to believe that the caged animals, and specifically the rabbit, were not being provided with proper protection from the weather in violation of D.C.Code § 22–801.

On appeal, we have phrased the issue as to indicate our agreement, with the presupposition of all the participants in this case, that appellant had a privacy interest sufficient to trigger fourth amendment protection. *See United States v. Booth*, 455 A.2d 1351, 1353–54 (D.C.1983). Our attention, therefore, is focused upon the nature of the protection afforded by the fourth amendment and whether the warrantless entry and seizure under the circumstances of this case was constitutionally reasonable, *i.e.*, within one of the established exceptions to the warrant requirement. We tread lightly in a constitutional arena, reciting basic tenets with which we do not think that appellant can seriously disagree.

## II

"Our Constitution envisions that searches will ordinarily follow procurement by police of a valid search warrant." *Warden v. Hayden*, 387 U.S. 294, 310, 87 S.Ct. 1642, 1651, 18 L.Ed.2d 782 (1967) (Fortas, J., concurring). This basic tenet of American political philosophy is based on the premise that a person's right to privacy would not be adequately protected were police officers given the power to conduct searches and seizures at their own discretion.[4] Relying on "the detached scrutiny of a neutral magistrate" rather than "the hurried judgment of a law enforcement officer 'engaged in ferreting out crime,'" *United States v. Chadwick*, 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977) (quoting *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948)) "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *United States v. Chadwick, supra*, 433 U.S. at 9, 97 S.Ct. at 2482.

Consistent with this belief, the Supreme Court has determined that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment ...." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnote omitted). However, to allow law enforcement officials to deal practically with various circumstances, the Court has declared that the warrant requirement is "subject ... to a few specifically established and well-delineated exceptions." *Id.* These excep-

---

4. *See Stanford v. Texas*, 379 U.S. 476, 481–82, 85 S.Ct. 506, 509–10, 13 L.Ed.2d 431 (1965). An analysis of the historical context in which the fourth amendment was framed and adopted reveals that it was "the product of contemporary revulsion against a regime of writs of assistance." *Id.* at 482, 85 S.Ct. at 510. Fresh in the memories of those who achieved our independence and established our form of government were those "hated writs of assistance" which gave "customs officials blanket authority to search where they pleased for goods imported in violation of the British tax laws." *Id.* at 481, 85 S.Ct. at 509. The newly independent Americans considered these general warrants to be "the worst instrument of arbitrary power, the most destructive of English liberty, and the fundamental principles of law, that ever was found in an English law book, because they placed 'the liberty of every man in the hands of every petty officer.'" *Id.* (statement made by James Otis as quoted in *Boyd v. United States*, 116 U.S. 616, 625, 6 S.Ct. 524, 529, 29 L.Ed. 746 (1886)).

tions are "jealously and carefully drawn." *Jones v. United States,* 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958) and "[t]he burden is upon the party who seeks to establish the constitutionality of a warrantless search to prove that the search falls within one of the recognized exceptions." *In re B.K.C.,* 413 A.2d 894, 902 (D.C.1980) (citing *Coolidge v. New Hampshire,* 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971) quoting *United States v. Jeffers,* 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951)); *see also McDonald v. United States,* 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948).

■ One such exception has been recognized under the title of "exigent circumstances." This "emergency" exception acknowledges that a warrantless entry and seizure may be legal when there is a compelling need for immediate official action and no time to secure a warrant. *See, e.g., United States v. Booth, supra,* 455 A.2d at 1354 (citing *Warden v. Hayden, supra,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782; *United States v. Minick,* 455 A.2d 874 (D.C.1983) (en banc); *Brooks v. United States,* 367 A.2d 1297 (D.C.1977); *Dorman v. United States,* 140 U.S.App.D.C. 313, 435 F.2d 385 (1970) (en banc); *see also In re B.K.C., supra,* 413 A.2d at 903 (citation omitted).) Exigency was the ground upon which the trial court upheld the warrant-less entry and seizure in this case.[5] The narrow issue before us is whether these facts present a situation that the law considers "exigent" so as to dispense with the warrant requirement.

■ Our analysis is governed by an objective standard of reasonableness, *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–1880, 20 L.Ed.2d 889 (1968), and "shaped by the realities of the situation presented by the record." *United States v. Robinson,* 174 U.S.App.D.C. 351, 354, 533 F.2d 578, 581 (1976). We conclude that the record here sustains the trial court's finding that the officials were confronting an emergency law enforcement situation, and that their urgent need to act as quickly as possible justified proceeding without a warrant.

At a hearing on the motion to suppress, Officer Jones testified to the following "specific, articulable facts," *United States v. Booth, supra,* 455 A.2d at 1355–56, which the trial court found provided the probable cause to believe that the entry and seizure were necessary to render emergency medical assistance to animals:[6] when she arrived at the scene she was informed of the suffering animals by the two people there—Sergeant Boone and Mr. Bright; the temperature that day was in excess of 100 degrees Fahrenheit; the temperature inside the store was hotter

---

**5.** In its ruling, the court also stated that the animals were in plain view and that the officials had probable cause to believe that appellant had unnecessarily failed to provide the animals with protection from the weather.

Although "[t]here may be, depending upon the circumstances, diminished privacy expectations in commercial premises" *Michigan v. Clifford,* — U.S. —, — n. 7, 104 S.Ct. 641, 648 n. 7, 78 L.Ed.2d 477 (1984), the fact that appellant displayed animals in open view at a commercial establishment is not enough by itself to authorize a warrantless seizure of that evidence. *See Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502 (1983); *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980); *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 354, 97 S.Ct. 619, 629, 50 L.Ed.2d 530 (1977). We note, however, that "[s]ince seizure of … an object [in plain view] threatens only the interest in possession, cir-cumstances diminishing that interest may justify exceptions to the Fourth Amendment's usual requirements." *Texas v. Brown, supra,* 103 S.Ct. at 1546 (Stevens, J. concurring). One such circumstance that has been held to trigger the "plain view" exception to the warrant requirement is when an officer has probable cause to believe that a publicly situated item is associated with criminal behavior. *Id.; see Payton v. New York, supra,* 445 U.S. at 587, 100 S.Ct. at 1380; *G.M. Leasing Corp. v. United States, supra,* 429 U.S. at 354, 97 S.Ct. at 629.

**6.** Since we disagree with appellant's assertion that this one officer's testimony was insufficient to show an emergent situation, we see no need to address his further claim that the trial court's order may not be supported by trial testimony. *Cf. Rushing v. United States,* 381 A.2d 252 (D.C. 1977).

than that on the street; she noticed several animals in cages in the display window area of appellant's store; the display chamber was a fully enclosed room facing the street, without any open doors or visible vents; she did not observe any fans cooling down the chamber; she observed the animals, a small puppy in particular, for approximately two to three minutes; the puppy was panting heavily and appeared "lifeless" and "on its last legs"; she tapped on the display window to arouse the animals, concentrating on the puppy, but there was no movement in return; she entered the store and observed the change in the puppy once it was removed from the hot chamber; she saw that appellant, despite repeated requests from her fellow officer and Mr. Bright, adamantly refused to remove the rabbit from the display case and in fact attempted to physically prevent Mr. Bright from rescuing the animal.

 It is apparent from Officer Jones' testimony that the "realities of the situation" were such that a warrant could not have been obtained without imperiling the life of the animal that appellant refused to remove from the display chamber. The seizure was lawful because (1) the presence or absence of an ample opportunity for getting a search warrant is a relevant factor in considering the reasonableness of any warrantless seizure, *McDonald v. United States, supra,* 335 U.S. at 455, 69 S.Ct. at 193, and (2) "[t]he need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978) (quoting *Wayne v. United States,* 115 U.S. App.D.C. 234, 241, 318 F.2d 205, 212 (opin-

ion of Burger, J.), *cert. denied,* 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963)). Although the exigency in the present case involved the protection of animal life rather than human life, we believe that the "public interest" [7] in the preservation of life in general and in the prevention of cruelty to animals in particular (*see* D.C.Code §§ 22–801, –814 (1981)) "require[s] some flexibility in the application of the general rule that a valid warrant is a prerequisite for a search." *Arkansas v. Sanders,* 442 U.S. 753, 759, 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235 (1979). Indeed, given the inherent delay in obtaining a warrant, procurement of one under the "exigent circumstances" of this case would most likely have frustrated the effective fulfillment of those public interests.

 Based on Officer Jones' testimony regarding her personal observation of the animals in the display window, as well as on her testimony concerning the information communicated to her upon her arrival at the pet store, we are convinced that there was a compelling societal need for immediate entry and for seizure, protection and treatment of the rabbit. Bearing in mind the oft-repeated thought that what may appear to be small in principal may loom large in principle, we conclude that the exigencies of the situation militated against delay and were of a sufficient proportion to justify proceeding without a warrant.

In this regard, there are no facts tending to show that the government officials' failure to obtain a warrant reflected an absence of concern for protecting fourth amendment values. The preventive action taken by them was " 'strictly circumscribed by the exigenc[y] which justif[ied] its initia-

---

**7.** The cases involving emergency entries to fight fires and the aftermath thereof are relevant to this aspect of our holding. *See, e.g., Michigan v. Clifford, supra,* —— U.S. at ——, 104 S.Ct. at 647 where the Court stated:

the aftermath of a fire often presents exigencies that will not tolerate the delay necessary to obtain a warrant or secure the owner's consent to inspect fire-damaged premises. Because determining the cause and origin of a fire serves a compelling public interest, the

warrant requirement does not apply in such cases.

(footnote omitted) and *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), where the Court held that a burning building clearly presents an exigency of sufficient proportions to render a warrantless entry reasonable, and, once in the building to extinguish a blaze, and for a reasonable time thereafter, firefighters may investigate the cause of the fire.

tion.'" *Mincey v. Arizona, supra,* 437 U.S. at 393, 98 S.Ct. at 2413 (quoting *Terry v. Ohio, supra,* 392 U.S. at 25–26, 88 S.Ct. at 1882; *see also United States v. Booth, supra,* 455 A.2d at 1355–56). The scope of the entry was carefully limited to that which was necessary to render assistance to the suffering animals. Once inside the shop, the police officers and the Humane Society representative did no more than the situation reasonably called for them to do—remove the rabbit from the window and provide it with medical care. *See United States v. Booth, supra,* 455 A.2d at 1355–56. Nor is there a suggestion that the emergency was artificially created by the officials' own action or inaction. Their entry into the display window was not "motivated primarily by the intent to arrest or to search, but by an intent to investigate a genuine emergency and to render assistance." *Id.* at 1356. We therefore find, in the narrow circumstances of this case, that the exigencies of the situation made the needs of law enforcement so compelling that the warrantless seizure of the rabbit was objectively reasonable under the fourth amendment.[8]

*Affirmed.*

---

8. The trial court properly denied appellant's motion to dismiss the information on the ground of negligent destruction of evidence. The loss of the rabbit was shown to be inadvertent. We are unimpressed by appellant's argument that the presence of a healthy rabbit at trial (over a year after appellant's arrest) was critical to his defense.