OPINION
Defendants-appellants, William and Jean Kilburn, appeal their convictions by the Lebanon Municipal Court. Appellants were found guilty of thirty-three counts of cruelty to animals, violations of R.C. 959.13(A)(1). We affirm.
On June 16, 1996, police were dispatched to investigate a report by Robert Burns, appellants' neighbor, that a horse was stuck in mud on appellants' property. Steven Arrasmith, a Deputy Sheriff for Warren County, responded to the dispatch.
Arrasmith testified that, while standing on Burns' property, he could to see that the horse was unable to get out of the mud. He knocked on appellants' door and did not find any one at home. Arrasmith then went behind appellants' house to where he had seen the horse. Arrasmith called the Warren County Humane Association ("WCHA") to help rescue the horse from the mud. While police and WCHA workers assisted the horse, they observed evidence that other animals on the farm were not receiving proper care. WCHA workers determined that the horse and numerous other animals on appellants' property had been deprived of necessary sustenance. They seized appellants' animals and placed them in the care of WCHA. On June 20, 1996, complaints were filed charging appellants with fifty-three counts (forty goats, ten dogs, two sheep, and one horse) of violating R.C. 959.13(A)(1). Complaints were also filed on June 25, 1996, charging appellants with an additional eighteen counts (sixteen goats, one sheep, and one dog) of violating R.C.959.13(A)(1).
On July 24, 1996, appellants filed a motion to suppress all evidence obtained as a result of the police search of appellants' residence and surrounding premises. A hearing on the motion to suppress was held on August 7, 1996. The trial court overruled appellants' motion to suppress on October 15, 1996. On October 17, 1996, the judge who denied the motion to suppress filed an affidavit stating "that due to a conflict of interest" it would be in the "best interests of justice for the Common Pleas Court to assign this matter to an impartial magistrate for all future proceedings." Thereafter, an entry was recorded on October 23, 1996 assigning another judge to hear and determine the case. Appellants filed a motion on November 5, 1996 for a rehearing on the motion to suppress because of the change in judges. The new judge denied appellants' motion for a rehearing on the motion to suppress.
On November 22, 1996, the court found appellants guilty of thirty-three violations of R.C. 959.13(A)(1) for thirty-one goats, one sheep, and one horse. Appellants received a suspended jail sentence and were fined. In sentencing appellants, the court also ordered that all of the animals which had been removed from appellants' premises (with the exception of four dogs) be forfeited and placed in the control of the WCHA. Appellants appeal this decision and present three assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTS-APPELLANTS IN DENYING THEIR MOTION TO SUPPRESS EVIDENCE ARISING FROM THE SEARCH OF THEIR HOME.
Appellants claim that the police search of their residence was not supported by probable cause or justified under R.C. 1717.13
and that the fruits of the search should have been suppressed. Appellants also argue that their due process rights were violated and they did not receive a fair proceeding because the trial judge who ruled on the motion to suppress requested that he be removed from the case.
The Fourth Amendment of the United States Constitution states in part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" Searches conducted outside the judicial process, without prior approval by judge or magistrate, "are per se unreasonable under theFourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katz v. United States (1967),389 U.S. 347, 357, 88 S.Ct. 507, 514.
One such exception is the exigent circumstances or "emergency" exception.
 Pursuant to that rule, a police officer, even absent a warrant or probable cause, may lawfully enter a structure, including a private home, when the totality of the facts and circumstances known to the officers gives rise to a reasonable belief that immediate entry is necessary to either protect that property or assist people inside who may be in danger or in need of immediate aid.
State v. Overholser (July 25, 1997), Clark App. No. 96-CA-0073, unreported, at 4. An often quoted opinion[1] written by Judge Burger, (later Chief Justice Burger), states:
 But a warrant is not required to break down a door to enter a burning home to rescue occupants or extinguish a fire, to prevent a shooting or to bring emergency aid to an injured person. The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency. * * * People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process. * * * A myriad of circumstances could fall within the terms "exigent circumstances" [including] * * * reasonable grounds to believe an injured or seriously ill person is being held within.
Wayne v. United States (C.A.D.C. 1963), 318 F.2d 205, 212. A warrantless search "must be `strictly circumscribed by the exigencies which justify its initiation.'" State v. Applegate (1994), 68 Ohio St.3d 348, 350, quoting Terry v. Ohio (1968),392 U.S. 1, 26, 88 S.Ct. 1868, 1882.
Questions of reasonable suspicion and probable cause to make a warrantless search should be reviewed de novo. Ornelas v. United States (1996), ___ U.S. ___, 116 S.Ct. 1657, 1659. A reviewing court may use the following three-part test to determine whether the emergency exception to the warrant requirement is applicable:
 (1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.
 (2) The search must not be primarily motivated by the intent to arrest and seize evidence.
 (3) There must be some reasonable basis, approximating probable cause to associate the emergency with the area or place to be searched.
State v. Cheers (1992), 79 Ohio App.3d 322, 326, quoting People v. Mitchell (1976), 39 N.Y.2d 173, 177-178. The emergency exception to the warrant requirement is not limited solely to humans, but may also extend to animals that require immediate emergency medical assistance. Tuck v. United States (App.D.C. 1984), 477 A.2d 1115. See, also, State v. Althiser (Dec. 30, 1997), Washington App. No. 97CA14, unreported, at 13-15.
In the present case, the trial court held that the warrantless search of appellants' property was justified because "this was an emergency situation for Deputy Arrasmith based upon the facts that he had at that time." Therefore, we will first review the evidence of the circumstances surrounding the warrantless search and then apply the three part test contained in Cheers.
Deputy Arrasmith testified that the only reason he was dispatched to appellants' residence was to check on a horse stuck in mud at that residence. Arrasmith also testified that he was able to see from the back of Burns' property that the horse was on its side and that half of its body had sunk into the mud. Arrasmith asked the radio dispatcher to call appellants' home. Arrasmith testified that the dispatcher told him that there was no response at the house. Arrasmith then went up to the house and knocked on the door, but there was no answer at the door. He then went behind the house to check on the horse. While walking towards the horse, Arrasmith testified that he passed a horse trailer that contained some Rottweiler dogs. He stated that he looked into the trailer and saw that the dogs had no food or water.
Upon reaching the horse, Arrasmith testified that:
 I noticed the hip bones that were showing through the skin on the back. It was sunk — half of it's body-you know the left side of its body — both the whole body was sunk in the mud. I tried to lift it's head up when I walked over to it. It's head came up briefly and came laid back down. Very little movement out of the horse.
Arrasmith testified that at this point, he decided to call the WCHA and the dog warden because of the condition of the animals he had seen. Arrasmith then stated that he noticed a decomposing sheep about twenty-five to thirty feet away from the stuck horse. He stated when he went over to look at the dead sheep, he was able to see into appellants' open barn, and saw that the animals were "packed" inside. While investigating the barn, Arrasmith saw a fifty five gallon drum in the barn full of dead goats. Thereafter, officers and humane association workers searched appellants' property for evidence of animal cruelty.
Having reviewed the evidence presented at the suppression hearing, we make the following conclusions: Arrasmith was justified in seeking assistance for the horse stuck in the mud because the horse's predicament was in plain view from Burns' property. Arrasmith rightfully tried to first contact the residents of the property and did not proceed to the horse's location until after unsuccessful attempts to contact the residents. While walking towards the horse, Arrasmith was able to plainly and properly observe other animals such as the dogs in the trailer, the dead goat, and the other animals inside the open barn. Viewing the condition of these animals established sufficient probable cause to believe that the crime of cruelty of animals had been committed, allowing for the more extensive search of appellants' property.
Therefore, applying the three factors outlined in Cheers,79 Ohio App.3d 322, to the facts of the case, we find that (1) the police had reasonable grounds to believe that there was an emergency at hand and that there was an immediate need for their assistance to protect the life of the horse stuck in the mud; (2) there was no evidence that the search was primarily motivated by the police's intent to arrest and/or seize evidence; and (3) there was a reasonable basis associated with the perceived emergency with each of the areas searched. Accordingly, we find that the emergency exception applies to the present case and that the evidence found subsequent to that search should not be excluded.
We also note that the facts of this case are very similar to the facts in Tuck v. United States (App.D.C. 1984), 477 A.2d 1115. In Tuck, the police were notified that animals could be seen suffering in an unventilated display window of a pet store. The officers entered the store and asked the owner to remove the animals from the display. When the owner refused to remove a rabbit which appeared to be suffering from the extreme heat of the display, an officer took the rabbit out of the display. The rabbit was impounded and rushed to an animal clinic. An examination of the animal showed that it was suffering from heat stroke and the owner was charged with cruelty to animals.
The court stated that "we have the difficult task of balancing a citizen's basic right to privacy against the necessity for police intrusion to thwart conduct which is threatening the life of animals in contravention of a legislative prohibition." Tuck,477 A.2d at 1116. The court held that the police intrusion was justified under the emergency exception. The court reasoned:
 Although the exigency in the present case involved the protection of animal life rather than human life, we believe that the "public interest" in the preservation of life in general and in the prevention of cruelty to animals in particular "requires some flexibility in the application of the general rule that a valid search warrant is a prerequisite for a search."
Id. at 1120 (citations excluded), quoting Arkansas v. Sanders (1979), 442 U.S. 753, 759, 99 S.Ct. 2586, 2590.
Appellants also claim that any evidence found by the police after they entered appellants' house should be suppressed.[2]
Arrasmith claimed that he entered appellants' house because he believed that Jean Kilburn might need medical assistance. However, we need not determine whether evidence found by the police after entering appellants' home should be suppressed. The court found appellants guilty of cruelty to animals for thirty-one goats, one sheep, and one horse. Evidence for these convictions came from the search conducted outside appellants' home subsequent to rendering assistance to the horse stuck in the mud. The only evidence of animal cruelty disclosed inside appellants' home involved a dog and some puppies, and appellants were found not guilty of animal cruelty towards these animals. Therefore, the issue of whether the trial court erred in not suppressing evidence discovered after the police entered appellants' home is moot.
Appellants also argue that the trial court erroneously concluded that the officers had authority to enter and search appellants' property pursuant to R.C. 1717.13. However, a review of the court's decision overruling appellants' motion to suppress shows that the trial court did not cite or rely upon R.C. 1717.13 in rendering its decision.
Appellants further argue that they did not receive a fair proceeding because the judge formed opinions which rendered him unable to hear factual and legal disputes objectively. The presence on the bench of a judge who is not impartial is structural constitutional error. State v. Esparza (1996), 74 Ohio St.3d 660,662, following Arizona v. Fulminante (1991), 499 U.S. 279, 310,111 S.Ct. 1246, 1265. "However, a trial judge is presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity." Okocha v. Fehrenbacher (1995), 101 Ohio App.3d 309,322.
We find that appellants' assertion that the judge was prejudiced simply because he withdrew from the case is not sufficient to overcome the presumption of integrity. Additionally, our standard of review is de novo and we have independently determined as a matter of law, without deference to the trial court's conclusion, that the trial court did not err in overruling appellants' motion to suppress. See Ornelas, ___ U.S. at ___, 116 S.Ct. at 1662; Althiser, Washington App. No. 97CA14, at 6. Accordingly, we find that appellants' constitutional rights were not violated. Appellants' first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT'S VERDICT IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
Appellants argue that there was no credible evidence that they recklessly deprived any of the animals of necessary maintenance. Appellants also claim that there was absolutely no evidence to show how long the animals had been without food or water on the date the search was performed on their property. We disagree.
"The weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." State v. Smith (1997), 80 Ohio St.3d 89, 113, following State v. Thompkins (1997), 78 Ohio St.3d 380, 387. The weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact. State v. Bell (Jan. 26, 1998), Madison App. No. CA96-07-027, unreported, at 15. The trier of fact has the benefit of seeing and hearing the witnesses testify, and is in the best position to determine the facts of the case. In re Good (Feb. 24, 1997), Butler App. Nos. CA96-02-026, CA96-03-036, unreported, at 9, discretionary appeal not allowed (1997), 79 Ohio St.3d 1418.
In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court must unanimously disagree with the fact finder's resolution of the conflicting testimony. Thompkins, 78 Ohio St.3d at 387.
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
R.C. 959.13(A)(1) states that no person shall:
 Torture an animal, deprive one of necessary sustenance, unnecessarily or cruelly beat, needlessly mutilate or kill, or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water.
Proof of recklessness is also required to sustain a conviction under R.C. 959.13(A). State v. Dresbach (Dec. 31, 1997), Franklin App. No. 97APC04-498, unreported, at 10; State v. Hammaker (Nov. 3, 1997), Preble App. No. CA97-02-004, unreported, at 9.
The evidence in the present case that appellants committed animal cruelty by depriving the animals of necessary sustenance is compelling. Over one hundred photographs were submitted as evidence, including individual pictures taken of each animal. The photographs show many of the animals suffering from severe malnutrition. During the trial, Dr. Harold Brown, a licensed veterinarian, rendered his expert opinion on the condition of each of the animals. His opinion was based upon the photographs and his notes from his examination of the animals shortly after they were impounded. Brown stated that each of the animals had been deprived of necessary sustenance. Many of the animals were diseased and had both external and internal parasites. The goats' hooves had not been trimmed for an unreasonable length of time. Some of the goats were unable to stand on their overgrown hooves and could only walk on their knees.
Amy Fugate, who works for the WCHA, stated that Jean Kilburn told her that because she had broken her hip she: (1) had "not been able to see the goats for two months," (2) "could not get out there and trim the animals' feet," and (3) "couldn't get out and feed the animals in the barn." Ms. Kilburn's comments are significant when viewed in light of William Kilburn's question to Jean Kilburn on June 16, 1996 overheard by Rodney Brown, the Warren County Dog Warden: "How do I get in the barn?"
Appellants' reckless neglect of the animals is illustrated by testimony about the physical condition of the animals, the lack of available water and food, and the unsanitary conditions in which the animals were housed. One of the officers testified that the goats in the barn were so hungry that they tried to eat the officers' gun belts when the officers went into the barn. Brown testified that William Kilburn stated on June 16, 1996, while referring to the horse stuck in the mud: "the horse had a right to die, just leave it alone and let it die." The trial court even commented that there was "overwhelming evidence" of appellants' guilt.
While appellants are correct in arguing that the state did not prove how long the animals had been without food and water, they are mistaken in their belief that this proves they did not commit animal cruelty. A review of the testimony and photographs presented shows that the animals had been without food and water for an unknown and an unreasonable length of time. Contrary to appellants' assertions, a reasonable person could believe that the emaciated state of the animals was not the result of the animals being deprived of food and water for less than a day.
Therefore, following a review of the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we find no basis to believe that appellants' convictions were against the manifest weight of the evidence. See Smith, 80 Ohio St.3d at 114. While appellants asserted that there was nothing wrong with the animals, the testimony of many witnesses coupled with photographic evidence contradicts their claim. We find that the greater amount of credible evidence, or the manifest weight of the evidence, supports appellants' convictions. Appellants' second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED IN ORDERING FORFEITURE OF ALL OF THE SEIZED ANIMALS UPON A FINDING OF NOT GUILTY OF THE CRUELTY TO ANIMAL CHARGES.
Appellants rely upon State v. Burrell (1991), 71 Ohio App.3d 507, in asserting that the taking of animals for which they were not found guilty of animal cruelty, constitutes an unlawful taking of their property without just compensation in violation of their state and federal constitutional rights. Appellants also claim that R.C. 959.99 provides for forfeiture for only those animals that were the subjects of appellants' convictions.
First, the holding in State v. Burrell (1991), 71 Ohio App.3d 507, that the defendant "was entitled to have his property returned to him upon dismissal of the charges against him" is not applicable to the present case. In Burrell, the court refused to return the defendant's animals even after he was not found guilty on any charges of animal cruelty. We distinguish Burrell from the present case because appellants were found guilty of thirty-three violations of animal cruelty.
Second, R.C. 959.99 is not the only statute which the trial court could have relied upon in sentencing appellants. R.C.959.99(D) provides penalties for violations of R.C. 959.13(A), and states in part: "the court may order the offender to forfeit the animal or livestock and may provide for its disposition including, but not limited to, the sale of the animal or livestock." However, former R.C. 2951.02(C) states that "[i]n the interests of doing justice, rehabilitating the offender, and ensuring the offender's good behavior, the court may impose additional requirements on the offender * * *." A trial court has broad discretion in determining conditions of probation and will not be subject to reversal on appeal absent an abuse of discretion. State v. Jones (1990), 49 Ohio St.3d 51, 52.
In the present case, the court held that all of the animals which were removed from appellants' premises were to be forfeited and "disposed of by sale or in accordance with the policies and procedures of the Humane Association of Warren County" with the exception of four dogs. The court also "precluded [appellants] from having any farm animals in their possession during the period of probation without prior approval from the probation department." Appellants were placed on probation for two years.
It is reasonable to infer that the decision of the trial court to require a forfeiture of most of the animals was related to the conditions of appellants' probation. This is similar to the facts of another case, State v. Sheets (1996), 112 Ohio App.3d 1, discretionary appeal not allowed (1996), 77 Ohio St.3d 1485, in which the trial court required the defendant to surrender one hundred twenty-one horses even though he was convicted of animal cruelty for only ten horses. The appellate court relied upon R.C.2951.02(C) and upheld the trial court's decision. The appellate court stated:
 The probationary conditions that appellant challenges certainly have a relationship to the crime of which he was convicted. Appellant failed to properly feed his horses and the probationary conditions prohibit him from owning or possessing horses. The conditions also relate to further criminality by preventing appellant from being in a position, as owner or possessor of a horse, where he would be responsible for the animal's feeding. Finally, the conditions relate to rehabilitation by impliedly permitting appellant to possess horses in the future.
We find that the trial court's order causing appellants to forfeit their animals was proper when considering appellants' convictions and the conditions of their probation. We find that the trial court did not abuse its discretion in ordering appellants to forfeit their animals as a condition of their probation. Accordingly, appellants' third assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J. concur.
[1] See Mincey v. Arizona (1978), 437 U.S. 385, 392-393,98 S.Ct. 2408, 2413; State v. Applegate (1994), 68 Ohio St.3d 348, 350; State v. Hyde (1971), 26 Ohio App.2d 32, 34; State v. Overholser (July 25, 1997), Clark App. No. 96-CA-0073, unreported, at 4; Cleveland v. Abuhamduh (Dec. 7, 1995), Cuyahoga App. No. 69035, unreported, at 9; State v. Durbin (July 11, 1988), Butler App. No. CA87-12-167, unreported, at 4.
[2] In addition to searching the barn, trailer, and surrounding areas, police also conducted a search of appellants' house.