A07A0151. MORGAN v. THE STATE.
(645 SE2d 745)

BERNES, Judge.

A Terrell County jury convicted Steve Morgan of eight counts of cruelty to animals. On appeal, Morgan contends that the trial court should have granted his motion to suppress and motion in limine relating to the warrantless search of his property. Morgan also

challenges a special condition imposed upon his probation and supersedeas bond preventing him from owning, possessing, or caring for any animal. For the reasons discussed below, we affirm the special conditions imposed upon Morgan's probation and supersedeas bond. However, we vacate the trial court's order denying Morgan's motion to suppress and motion in limine, and we remand for the trial court to determine whether there were exigent circumstances justifying the warrantless search.[1]

1. Morgan argues that the trial court should have granted his motion to suppress and motion in limine pertaining to the search of his residence and the surrounding curtilage and the seizure of dogs from his property.

> On appeal from the grant of a motion to suppress or motion in limine, this [C]ourt's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them.

(Citations omitted.) *State v. Ealum*, 283 Ga. App. 799 (643 SE2d 262) (2007). In reviewing the trial court's decision, "we consider all the evidence of record, including evidence introduced at trial." (Citation and footnote omitted.) *Wesson v. State*, 279 Ga. App. 428, 431 (2) (631 SE2d 451) (2006).

So viewed, the evidence introduced at the suppression hearing and at trial reflects the following. On December 23, 2004, at approximately 5:00 p.m., a deputy with the Terrell County Sheriff's Department responded to a call from one of Morgan's neighbors stating that Morgan was keeping animals on his property that "were mistreated" and "were not healthy." The weather was rainy and extremely cold, with a wind chill factor of 10 degrees Fahrenheit. After arriving at the scene, the deputy spoke with Morgan's neighbor and knocked on Morgan's front door, but Morgan was not there. From the driveway and from the road, the deputy was able to observe horses in a pasture owned by Morgan and pens in Morgan's front yard containing ducks, geese, pigeons, and a small pot-bellied pig. The deputy could see from

---

[1] On the first page of his brief, Morgan suggests that he also is challenging the sufficiency of the evidence and the length of his sentence. But, Morgan has provided no argument or citation of authority to support these challenges at any other point in his brief, and so he has abandoned them on appeal. See Court of Appeals Rule 25 (a) (3), (c) (2).

that vantage point that the animals had no shelter protecting them from the bitter weather and no food or water provided to them by Morgan. According to the deputy, the animals clearly were "starving," "distress[ed]," in "ill health," and had been "maltreated."

While observing the animals in the front of Morgan's house, the deputy could hear dogs barking in the backyard, and so he decided to check on them. The deputy "wanted to make sure there was none of them back there any worse than the ones in the front." Once in the backyard, the deputy discovered two pens with skeletal remains and a pen with two dogs that were "really matted and nasty and thin and wormy looking." The pens were filled with debris, mud, and feces. He also discovered other dogs running around in a fenced area with no shelter protecting them from the wind, rain, or cold. The deputy never saw any evidence that Morgan had provided any food or water for any of the dogs, which appeared malnourished. Another dog that was almost frozen to death was discovered on the back porch with one of its legs caught between the floor boards.

Believing that the animals were in jeopardy and needed immediate attention, the deputy obtained animal feed from Morgan's neighbor and assisted him in feeding the animals in the front of Morgan's home. The deputy also attempted to make radio contact with animal control for assistance, but was unable to reach anyone because of the approaching holidays. Consequently, the deputy traveled to the home of the animal control officer he knew and asked her to assist him. The animal control officer came to the scene along with an assistant and began catching the dogs so that they could be taken for emergency evaluation and treatment at a veterinarian clinic.

While the dogs were being seized, Morgan arrived home, and the deputy placed him under arrest for cruelty to animals. Morgan asked that he be allowed to turn off the lights in his house. The deputy informed Morgan that because he was under arrest, the deputy would need to accompany him into his house. Morgan consented to the deputy accompanying him. Inside the home, the deputy saw several more dogs and observed that the floor was covered in feces and that the conditions were "pretty nasty." Animal control seized these dogs as well.

By the time that all of the dogs were caught by animal control, it was approximately 11:30 at night. In total, animal control removed ten dogs from Morgan's property and immediately transported them to a veterinarian clinic. One of the dogs died in transit. Two other dogs had to be hospitalized because it was unclear whether they would live through the night. The dogs were variously diagnosed as emaciated, hypothermic, lethargic, and suffering from heart worm or hook worm

infections. One of the dogs had severely abscessed teeth. Another dog, which suffered from a bad cough and heart worms, subsequently died.

Following his indictment on multiple counts of cruelty to animals, Morgan moved to exclude from trial all photographs, tangible evidence, and testimony concerning the search of his property and the seizure of his dogs. Morgan maintained that the search of his residence and the surrounding curtilage violated the Fourth Amendment to the United States Constitution because it was conducted without a search warrant and in the absence of consent or exigent circumstances. After conducting an evidentiary hearing, the trial court denied the motion. The trial court found that the entry and search of the curtilage "was valid based on the plain view doctrine" and that the evidence seized from Morgan's residence was "likewise admissible, as [Morgan] was under arrest and the [deputy] was merely guarding the prisoner based on . . . Morgan's request to enter his home and turn out the lights."

(a) *The Curtilage.* Morgan contends that the trial court erred in concluding that the warrantless search of the curtilage surrounding his home was justified under the plain view doctrine. We agree that the plain view doctrine, standing alone, did not provide a sufficient basis for the search of the curtilage.

It is true that the deputy's initial observations of malnourished and mistreated animals occurred while he was standing in the driveway and on the public road, a vantage point that "breached no right of privacy of [Morgan]." *State v. Nichols*, 160 Ga. App. 386 (287 SE2d 53) (1981). See *Sirmans v. State*, 244 Ga. App. 252, 254-255 (2) (b) (534 SE2d 862) (2000) (officer's observations of mistreated animals from public roadway did not violate defendant's Fourth Amendment rights); *Galloway v. State*, 178 Ga. App. 31, 34 (342 SE2d 473) (1986) (officer's observations made while on driveway did not violate defendant's Fourth Amendment rights since officer had taken "the same route as would any guest, deliveryman, postal employee, or other caller") (citation and punctuation omitted). These initial observations constituted "a lawful[,] nonsearch plain view situation" supporting a finding of probable cause to suspect that the crime of cruelty to animals was being committed on Morgan's property. (Punctuation and footnote omitted.) *Boldin v. State*, 282 Ga. App. 492, 495 (2) (639 SE2d 522) (2006). See *Sirmans*, 244 Ga. App. at 254-255 (2) (b) (plain view observation of animals in deprived condition supplied officer with probable cause to search defendant's property).

However, the officer's initial plain view observations from the driveway and road, in and of themselves, did not authorize the officer to then make a warrantless entry into Morgan's backyard — a location undisputably within the curtilage surrounding the residence

— and take steps culminating in the dogs there being seized and removed from the property.

> [T]he plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer only if the officer's access to the object itself has some prior Fourth Amendment justification. The officer gains access justified by the Fourth Amendment by obtaining a warrant, obtaining consent, or by the existence of exigent circumstances which require the officer to act immediately without warrant or consent.

(Citations and emphasis omitted.) *State v. David*, 269 Ga. 533, 535-536 (2) (501 SE2d 494) (1998). See also *Carranza v. State*, 266 Ga. 263, 268 (1) (467 SE2d 315) (1996) (even if officer observes crime occurring in residence, the officer cannot enter the home without a warrant, consent, or exigent circumstances); *Merriman v. State*, 201 Ga. App. 817, 821 (1) (412 SE2d 598) (1991) (after officers standing on adjacent land observed marijuana in open view on defendant's property, "[t]he procedure then would be to obtain search and arrest warrants," if there is no showing of consent or an exigency). Furthermore, "[c]urtilage has been considered part of the home itself for Fourth Amendment purposes and courts have extended Fourth Amendment protection to the curtilage." (Footnote omitted.) *Gordon v. State*, 277 Ga. App. 247, 249 (626 SE2d 214) (2006). Based on this case law, the deputy's warrantless entry into Morgan's backyard and seizure of the dogs located there was unconstitutional, unless the deputy had Morgan's consent or was acting under exigent circumstances. See *Galloway*, 178 Ga. App. at 33. It is undisputed that Morgan did not consent to the search of his backyard or to the seizure of his dogs located there, so the present case turns on whether exigent circumstances existed.

"Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Gilreath v. State*, 247 Ga. 814, 820 (1) (279 SE2d 650) (1981), quoting *Mincey v. Arizona*, 437 U. S. 385, 392 (98 SC 2408, 57 LE2d 290) (1978). Multiple jurisdictions have held that the same rule should apply when an officer has a reasonable belief that an animal on the property is in need of immediate aid. See *Tuck v. United States*, 477 A2d 1115, 1120-1121 (D.C. 1984); *People v. Thornton*, 676 NE2d 1024, 1028-1029 (Ill. App. 1997); *State v. Stone*, 92 P3d 1178, 1181-1184 (Mont. 2004); *Pine v. State*, 889 SW2d 625, 631-632 (Tex. App. 1994); *State v. Bauer*, 379 NW2d 895, 899 (Wis. App. 1985). We agree with these jurisdictions.

> Although the exigency . . . involve[s] the protection of animal life rather than human life, we believe that the public interest in the preservation of life in general and in the prevention of cruelty to animals in particular requires some flexibility in the application of the general rule that a valid warrant is a prerequisite for a search.

(Citations, punctuation and footnote omitted.) *Tuck*, 477 A2d at 1120 (II).

Nevertheless, it is clear from the trial court's order that it never addressed the issue of whether exigent circumstances were present that would justify the warrantless search; rather, the trial court limited its inquiry to the application of the plain view doctrine. "Whether [exigent] circumstances exist is a question of fact to be determined by the trial court," not this Court in the first instance. (Citation, punctuation and footnote omitted.) *Jackson v. State*, 280 Ga. App. 716, 718 (1) (634 SE2d 846) (2006). We therefore vacate the trial court's order denying Morgan's motion to suppress and motion in limine, and we remand the case to the trial court to determine whether exigent circumstances existed justifying the warrantless entry onto the curtilage around Morgan's residence and the seizure of the dogs located there. See *Quick v. State*, 279 Ga. App. 835, 837-838 (632 SE2d 742) (2006); *State v. McKinney*, 268 Ga. App. 296, 299 (1) (601 SE2d 777) (2004); *Pruitt v. State*, 263 Ga. App. 814, 819 (2) (589 SE2d 591) (2003).

(b) *The Residence.* Morgan also asserts that the trial court erred in finding that the deputy's warrantless entry into his residence and seizure of the dogs there passed constitutional muster. The record reflects, and the trial court found, that after Morgan was arrested outside his home, he consented to allowing the deputy to accompany him into his home so that he could turn off the lights, at which point the deputy observed the dogs in plain view and had them seized by animal control. "Evidence obtained as a result of a lawful consent does not require a warrant in order to be admissible." (Citation omitted.) *Weaver v. State*, 178 Ga. App. 91, 92 (1) (341 SE2d 921) (1986). But, resolution of whether Morgan's consent was obtained lawfully is not possible until the issue of exigent circumstances discussed above is resolved by the trial court. See *Black v. State*, 281 Ga. App. 40, 48 (1) (635 SE2d 568) (2006) (concluding that whether consent was lawful was contingent upon whether the immediately preceding search of the defendant's property was lawful). Accordingly, on remand, the trial court will need to revisit the issue of whether Morgan's consent was lawful after resolving whether there were exigent circumstances justifying the warrantless search of the curtilage.

2. Morgan next maintains that the trial court erred in placing a special condition on his probation that he "shall not own, possess, or care for any animal during the term of [his] sentence." Morgan emphasizes that he owns an animal grooming business, and that, as a result, the probation condition will prevent him from carrying out his livelihood.

> A trial judge has broad discretion in imposing conditions of probation, and in the absence of express authority to the contrary, there is no reason why any reasonable condition of probation should not be approved. Furthermore, there is a presumption that a sentence was correctly imposed, and the burden of showing that a sentence was not correctly imposed is with the party who asserts its impropriety.

(Punctuation and footnotes omitted.) *Stephens v. State*, 247 Ga. App. 719, 721 (2) (545 SE2d 325) (2001).

We conclude that Morgan has failed to carry his burden of showing that the special condition is unreasonable. The challenged condition does not exceed the length of the sentence and serves the rehabilitative purpose of making clear that the abuse of animals results in the withdrawal of any privilege to handle or keep them. See *Stephens*, 247 Ga. App. at 721 (2) (upholding probation condition in animal cruelty case providing that defendant could not "own any dogs or live at a residence where dogs were present"); *Quintrell v. State*, 231 Ga. App. 268, 271-272 (2) (499 SE2d 117) (1998) (upholding probation condition because it did "not exceed the length of the sentence and clearly serve[d] the rehabilitative purpose of [the defendant's] sentence by making plain that abuse of the privileges results in their withdrawal") (footnotes omitted). Additionally, the fact that the challenged condition will affect Morgan's livelihood as an animal groomer does not render it unreasonable, since Morgan was convicted of offenses relating to the treatment of animals. See *Dudley v. State*, 242 Ga. App. 53, 57 (3) (527 SE2d 912) (2000) (concluding that because defendant was convicted of offenses relating to his position of police chief, the trial court's "decision not to allow him to be involved in law enforcement . . . while on probation may both rehabilitate him and protect society from further abuse of power by him") (footnote omitted), rev'd on other grounds, 273 Ga. 466 (542 SE2d 99) (2001). The trial court thus acted within its discretion in imposing the special condition of probation upon Morgan.

3. Finally, Morgan argues that the trial court erred in placing the same special condition on his supersedeas bond. "[I]n lieu of setting a higher bond, which may preclude a defendant from being released at all pending appeal, a trial court may choose to impose reasonable

restrictions on a defendant's behavior." (Citation and punctuation omitted.) *Dudley v. State*, 230 Ga. App. 339, 341 (496 SE2d 341) (1998). See also *Clarke v. State*, 228 Ga. App. 219, 220 (1) (491 SE2d 450) (1997). As long as the conditions placed on the bond are reasonable under the facts and circumstances of the case, they will be upheld on appeal. *Dudley*, 230 Ga. App. at 341. See also *Camphor v. State*, 272 Ga. 408, 410-411 (2) (b) (529 SE2d 121) (2000).

For the same reasons discussed in Division 2, we conclude that Morgan has failed to carry his burden of showing that the special condition imposed upon his supersedeas bond is unreasonable. Morgan relies upon *Dudley*, 230 Ga. App. 339, in an effort to show the unreasonableness of the condition. But, in that case, the trial court conditioned the defendant's bond on, among other things, the defendant not working in the fields of bail bonding, dog training, and private investigating, although his conviction was "totally unrelated" to those fields of endeavor. Id. at 341. In contrast, in the instant action, the special condition places restrictions solely on a field of endeavor directly related to Morgan's conviction. Hence, the trial court committed no error in imposing the special condition on Morgan's supersedeas bond.

*Judgment affirmed in part, vacated in part and case remanded with direction. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED MAY 8, 2007.

*Britt R. Priddy*, for appellant.
*Charles M. Ferguson, District Attorney, Ronald S. Smith, Keith W. Day, Assistant District Attorneys*, for appellee.