A07A2445. MORGAN v. THE STATE.
(656 SE2d 857)

BERNES, Judge.

Steve Morgan filed a motion to suppress and motion in limine relating to the warrantless search of his residence and surrounding curtilage and the seizure of dogs from his property. Following an evidentiary hearing, the trial court denied the motions, and Morgan subsequently was convicted of eight counts of cruelty to animals. Morgan appealed, and in *Morgan v. State*, 285 Ga. App. 254, 255-259 (1) (645 SE2d 745) (2007) ("*Morgan I*"), we vacated the trial court's order denying Morgan's motions and remanded for the trial court to determine whether exigent circumstances justified the failure to obtain a warrant. On remand, the trial court reviewed the record and entered a detailed order finding that exigent circumstances existed. Morgan now appeals from that order. Finding no error, we affirm.

In reviewing a ruling on a motion to suppress or motion in limine, we construe the evidence in the light most favorable to the trial court's findings and judgment. *State v. Menezes*, 286 Ga. App. 280 (648 SE2d 741) (2007). Construed in this manner, the evidence adduced at the suppression hearing and at trial, as set out in *Morgan I*, is as follows:

On December 23, 2004, at approximately 5:00 p.m., a deputy with the Terrell County Sheriff's Department responded to a call from one of Morgan's neighbors stating that Morgan was keeping animals on his property that "were mistreated" and "were not healthy." The weather was rainy and extremely cold, with a wind chill factor of 10 degrees Fahrenheit. After arriving at the scene, the deputy spoke with Morgan's neighbor and knocked on Morgan's front door, but Morgan was not there. From the driveway and from the road, the deputy was able to observe horses in a pasture owned by Morgan and pens in Morgan's front yard containing ducks, geese, pigeons, and a small pot-bellied pig. The deputy could see from that vantage point that the animals had no shelter protecting them from the bitter weather and no food or water provided to them by Morgan. According to the deputy, the animals clearly were "starving," "distress[ed]," in "ill health," and had been "maltreated."

While observing the animals in the front of Morgan's house, the deputy could hear dogs barking in the backyard, and so he decided to check on them. The deputy "wanted to make sure there was none of them back there any worse than the ones in the front." Once in the backyard, the deputy discovered two pens with skeletal remains and a pen with two dogs that were "really matted and nasty and thin and wormy looking." The pens were filled with debris, mud, and feces. He also discovered other dogs running around in a fenced area with no shelter protecting them from the wind, rain, or cold. The deputy never saw any evidence that Morgan had provided any food or water for any of the dogs, which appeared malnourished. Another dog that was almost frozen to death was discovered on the back porch with one of its legs caught between the floor boards.

Believing that the animals were in jeopardy and needed immediate attention, the deputy obtained animal feed from Morgan's neighbor and assisted him in feeding the animals in the front of Morgan's home. The deputy also attempted to make radio contact with animal control for assistance, but was unable to reach anyone because of the approaching holidays. Consequently, the deputy traveled to the home of the animal control officer he knew and asked her to assist him. The animal control officer came to the scene along with an assistant and began catching the dogs so that they could

be taken for emergency evaluation and treatment at a veterinarian clinic.

While the dogs were being seized, Morgan arrived home, and the deputy placed him under arrest for cruelty to animals. Morgan asked that he be allowed to turn off the lights in his house. The deputy informed Morgan that because he was under arrest, the deputy would need to accompany him into his house. Morgan consented to the deputy accompanying him. Inside the home, the deputy saw several more dogs and observed that the floor was covered in feces and that the conditions were "pretty nasty." Animal control seized these dogs as well.

By the time that all of the dogs were caught by animal control, it was approximately 11:30 at night. In total, animal control removed ten dogs from Morgan's property and immediately transported them to a veterinarian clinic. One of the dogs died in transit. Two other dogs had to be hospitalized because it was unclear whether they would live through the night. The dogs were variously diagnosed as emaciated, hypothermic, lethargic, and suffering from heart worm or hook worm infections. One of the dogs had severely abscessed teeth. Another dog, which suffered from a bad cough and heart worms, subsequently died.

*Morgan I*, 285 Ga. App. at 255-257 (1).

"It is axiomatic that, under the Fourth Amendment, police officers are prohibited from entering a person's home or its curtilage without a warrant absent consent or a showing of exigent circumstances." (Citation omitted.) *State v. Pando*, 284 Ga. App. 70, 72 (1) (a) (643 SE2d 342) (2007). The events set out above took place without the procurement of a search warrant, and the entry into Morgan's backyard — an area undisputably within the curtilage of his residence — and the seizure of the dogs there occurred without his consent. Consequently, as noted in *Morgan I*, "the deputy's warrantless entry into Morgan's backyard and seizure of the dogs located there was unconstitutional, unless the deputy . . . was acting under exigent circumstances." *Morgan I*, 285 Ga. App. at 258 (1) (a).

1. Morgan argues that the trial court erred in ruling on remand that exigent circumstances existed that justified the deputy's warrantless entry into his backyard and the seizure of the dogs there. We disagree.

The exigent circumstances exception to the warrant requirement applies in circumstances "where the exigencies of the situation

make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." (Citation and punctuation omitted.) *Richards v. State*, 286 Ga. App. 580, 582 (649 SE2d 747) (2007). Such circumstances exist where a police officer reasonably believes that an animal on the property is in need of immediate aid due to injury or mistreatment. *Morgan I*, 285 Ga. App. at 258 (1) (a). In the instant case, the deputy's initial observation of malnourished and mistreated animals from the driveway and road, combined with the allegations of animal mistreatment made by Morgan's neighbor and the prevailing harsh weather conditions, provided the deputy with a reasonable belief that the dogs heard barking in the backyard were in need of immediate aid to prevent their serious injury or death. As such, an exigency existed justifying the deputy's decision to make an immediate warrantless entry into Morgan's backyard where the barking dogs were located. Likewise, once the officer entered the backyard and observed the seriously deprived condition of the dogs, he was entitled to respond to the dire emergency situation by having the dogs immediately seized so that they could be transported for emergency medical treatment. Accordingly, under these circumstances, "the prevention of needless suffering and death of the animals on [Morgan's] property created exigent circumstances justifying the warrantless search for and rescue of the animals." *State v. Stone*, 92 P3d 1178, 1184 (1) (Mont. 2004). See also *Tuck v. United States*, 477 A2d 1115, 1120-1121 (II) (D.C. App. 1984); *People v. Thornton*, 676 NE2d 1024, 1028-1029 (Ill. App. Ct. 1997); *Pine v. State*, 889 SW2d 625, 631-632 (Tex. App. 1994); *State v. Bauer*, 379 NW2d 895, 898-899 (Wis. Ct. App. 1985).

Nevertheless, Morgan contends that the deputy's decision to leave the property and go to the home of the animal control officer he knew in order to obtain her assistance demonstrates that a search warrant could have been obtained prior to seizure of the dogs. We are unpersuaded. As an initial matter, there is no evidence in the record to indicate how long it would have taken to obtain a search warrant, given the late hour and the approaching holiday. Moreover, it is clear from the record that the deputy here had no time to spare, given the time of day and the bitter weather conditions, and we decline to hold that the deputy was required to make a Hobson's choice between taking the time to obtain a search warrant or rescuing the distressed animals. "Indeed, given the inherent delay in obtaining a warrant, procurement of one under the exigent circumstances of this case would most likely have frustrated the effective fulfillment of [the] public interests" at stake, namely, the preservation of animal life and prevention of needless suffering. (Punctuation omitted.) *Tuck*, 477 A2d at 1120 (II). See also *Thornton*, 676 NE2d at 1029 (exigent circumstances existed where "[t]he amount of time it might have

taken the officers to obtain a search warrant [was] unclear, and the officers had a reasonable belief that they had to act at once to aid the dog").

Morgan further argues that the deputy could have contacted one of the other deputies on duty that night and had him or her obtain the warrant while Morgan attended to the distressed animals. We disagree. Terrell County had a total of three deputies on duty at the time of the search. It is pure speculation as to whether the other two deputies would have had time to draft, seek, and procure a warrant for Morgan's property in the course of fielding their own calls and carrying out their own responsibilities at the time of the search of the property and seizure of the dogs.

For these reasons, the trial court committed no error in finding that the warrantless entry into Morgan's backyard and the seizure of the dogs there was constitutional. Accordingly, we affirm the trial court's denial of Morgan's motion to suppress and motion in limine insofar as it pertained to the search of the curtilage of his property and the seizure of the dogs there.

2. Although unclear from his brief, Morgan also appears to argue that the subsequent entry into his residence and seizure of the dogs there was unconstitutional. Again, we disagree.

Following his arrest, Morgan consented to the deputy accompanying him into his home so that he could turn off the lights, whereupon the deputy observed several dogs in plain view in unsanitary conditions and had them seized by animal control. "Evidence obtained as a result of a lawful consent does not require a warrant in order to be admissible." (Citation omitted.) *Weaver v. State*, 178 Ga. App. 91, 92 (1) (341 SE2d 921) (1986). Whether a defendant lawfully consented to a search of his residence following his arrest "is contingent upon whether his initial detention and arrest were lawful." (Citation and footnote omitted.) *Black v. State*, 281 Ga. App. 40, 42 (1) (635 SE2d 568) (2006). Once an officer enters into a residence based on the valid consent of the defendant, the officer is entitled to seize contraband or other evidence found in plain view while investigating the scene. *Overman v. State*, 250 Ga. 494, 496 (2) (299 SE2d 542) (1983).

Morgan's arrest was lawful in light of the deputy's observations of animal mistreatment and malnourishment made after the deputy lawfully entered into the backyard. See OCGA § 16-12-4 (b) ("A person commits the offense of cruelty to animals when he or she causes death or unjustifiable physical pain or suffering to any animal by an act, an omission, or willful neglect."). And, "[t]he circumstances apparent in the evidence presented show nothing but voluntariness on [Morgan's] part in granting the consent." *Floyd v. State*, 142 Ga. App. 425, 426 (2) (236 SE2d 157) (1977). It follows that the deputy's

entry into the home was done with Morgan's lawful consent, and, as such, the subsequent seizure of the dogs in the home was based on the deputy's plain view observations in a location where he was authorized to be. The trial court therefore did not err in denying the motion to suppress and motion in limine. See *Overman*, 250 Ga. at 496 (2); *Weaver*, 178 Ga. App. at 92 (1); *Floyd*, 142 Ga. App. at 426 (2).

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED JANUARY 16, 2008.

*Britt R. Priddy, James C. Bonner, Jr.*, for appellant.

*Charles M. Ferguson, District Attorney, Keith W. Day, Assistant District Attorney*, for appellee.