69 A.3d 26

**Julius HENSON**

v.

**STATE of Maryland.**

No. 1046, Sept. Term, 2012.

Court of Special Appeals of Maryland.

May 31, 2013.

---

Edward Smith, Jr., Baltimore, MD, for Appellant.

Thomas M. McDonough (Emmet C. Davitt, State Prosecutor, on the brief), Towson, MD, for Appellee.

Panel: MATRICCIANI, HOTTEN and CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

MATRICCIANI, J.

A jury sitting in the Circuit Court for Baltimore City convicted appellant Julius Henson of conspiracy to violate Md.Code (2003, 2010 Repl.Vol.), §§ 13–401 and 13–602(a)(9) of

the Election Law Article ("EL"), by distributing campaign material without an "authority line" disclosing the name of the responsible campaign finance entity and treasurer. At the close of evidence appellant moved unsuccessfully for a judgment of acquittal. After conviction and sentencing, appellant noted this timely appeal.

### QUESTIONS PRESENTED

Appellant presents five questions for our review; they are:

I. Was the application of E[lection] L[aw] § 16–201(1)(7) to [appellant] [c]onstitutionally vague?

II. Was the jury verdict inconsistent in counts three (3) and five (5)?

III. Was the court's instruction to the jury on aiders and abettors clearly erroneous?

IV. Did the trial court err when it refused to allow [appellant's] experts to testify that [in their opinions] the call, its content and the lack of authority line were the responsibility of the campaign and not [appellant's] [ ]?

V. Was the court's sentence forbidding [appellant's] participation in politics illegal?

For the reasons that follow, we answer no to each question and affirm the judgment of the circuit court.

### FACTUAL AND PROCEDURAL HISTORY

In the days immediately preceding the November 2, 2010 statewide elections, senior members of the Bob Ehrlich for Maryland Campaign met to discuss strategy. The discussion among Paul Schurick, Greg Massoni, and Bernie Marczyk,[1] pertained to, *inter alia,* how to influence African–American voter turnout in Baltimore City and Prince George's County.

---

1. Of the persons listed, only Senior Aid Paul Schurick is material to this appeal. Schurick's own case arising out of these and additional allegations was tried separately. For the purposes of appellant's conspiracy conviction, Schurick was appellant's coconspirator.

The Ehrlich Campaign retained appellant's businesses, Politics Today and Universal Elections, to provide consulting services. In that capacity, appellant received a telephone call from Paul Schurick inquiring how the Campaign could decrease voter turnout in the aforementioned jurisdictions. Appellant responded that a robocall would best fit the Campaign's designs.

To effect the plan, appellant and his employee, Rhonda Russell, retained the services of a company named Robodial.org. Robodial.org owns and operates software that places recorded phone calls—known as "robocalls"—and records logistical data about them. Ms. Russell set up an account with Robodial.org and uploaded a list of phone numbers for residents in each county who were selected to receive the robocall.[2] On election day, appellant dictated the call's language and Ms. Russell sent a test message to appellant, Paul Schurick, and Greg Massoni. The call stated:

> Hello. I'm calling to let everyone know that Governor O'Malley and President Obama have been successful. Our goals have been met. The polls were correct and we took it back. We're okay. Relax. Everything is fine. The only thing left is to watch it on TV tonight. Congratulations and thank you.

Ms. Russell inquired why the message lacked an authority line, and appellant responded that the client did not want one. After appellant gave her the "green light," Ms. Russell uploaded the contents of the message to Robodial.org.

Shirley Malloy, a resident of Prince George's County, testified to receiving the robocall on the evening of November 2, 2010. At the time the call was placed to her, the polls were still open. Ms. Malloy testified that the call raised her suspicions because the President was not a candidate on any ballot in Maryland at that time. Peter Vandermeer, a Baltimore City resident, received the same call. The suspicious nature of the call prompted him to vote, and to inform the

---

2. Appellant's businesses had previously compiled these lists for Democratic Party candidates in Baltimore City and Prince George's County.

Attorney General's Office and the Board of Elections about the call.

Appellant was soon indicted on charges that he "did knowingly and willfully cause to be published and distributed campaign material that did not include the name of the campaign finance entity and the treasurer responsible for said publication and distribution, in violation of §§ 13–401 and 13–602(a)(9) of the Election Law Article of the Annotated Code of Maryland against the peace, government and dignity of the State." The indictment also alleged that the robocall and authority line omissions constituted voter fraud in violation of EL § 16–201(a)(6),[3] and that appellant conspired with Paul E. Schurick to commit all of these acts.

The jury found appellant guilty only of conspiracy to violate the authority line requirement of EL § 13–401, and the court sentenced appellant to a one-year term of imprisonment, with all but two months suspended. The court ordered appellant to serve three years of probation upon release from confinement, on the condition that appellant refrain from "working in any capacity in election campaigns[,] whether it's in a voluntary status or paid."

### DISCUSSION

This case presents us with a sad tale. Appellant and his collaborators callously attempted to manipulate members of the electorate in an effort to dissuade predominantly African–American voters from exercising their constitutional right to vote in a gubernatorial election. As we will explain, *infra,* the current appeal presents no grounds to reverse his conviction or sentence.

### I.

Appellant's first question presented, whether "EL § 16–201(1)(7)" is constitutionally vague, is puzzling for a

---

3. The indictment originally charged appellant with violations of the phantom section "16–201(1)(7)," but was later amended to charge appellant properly under EL § 16–201(a)(6).

number of reasons. First, a subsection "(1)(7)" does not exist in EL § 16–201, and appellant is seemingly unaware that his indictment was amended to charge him under § 16–201(a)(6),[4] which in any event was not the basis of appellant's *conviction.* Third, the body of appellant's brief nowhere addresses protection from vague laws under the Due Process Clause. *See F.C.C. v. Fox Television Stations, Inc.,* —— U.S. ——, 132 S.Ct. 2307, 2317, 183 L.Ed.2d 234 (2012). Instead, he seems to have mistaken vagueness for his First Amendment defense, and then further confused matters by arguing *not* that EL §§ 13–401 and 13–602(a)(9) unconstitutionally suppress protected speech, but that his speech actually *did not fall within* the (allegedly unconstitutional) scope of these sections.

At the heart of appellant's tangled arguments is his fundamental confusion about the dual nature of his crime: the robocall not only misrepresented the course of the election, it also failed to disclose the source of funds used to create and broadcast the message. While appellant was charged with voting fraud under EL § 16–201(a)(6), he was convicted only of failure to include an authority line under EL §§ 13–401 and 13–602(a)(9).[5]

Appellant cites[6] a 1995 Maryland Attorney General's opinion discussing *McIntyre v. Ohio Elections Comm'n,* 514 U.S.

---

**4.** This subsection prohibits "conduct that results or has the intent to result in the denial or abridgement of the right of any citizen of the United States to vote on account of race, color, or disability."

**5.** As noted in the description of appellant's charges, EL § 13–602(a)(9) provides that "[a] person may not publish or distribute, or cause to be published or distributed, campaign material that violates" the authority line disclosure requirements of EL § 13–401, and § 13–602(b)(1) further provides that any "person" who does is guilty of a criminal misdemeanor. By contrast, EL § 16–201(a)(6) goes beyond mere failure to disclose the source of campaign funds and provides that a person may not "influence or attempt to influence a voter's decision whether to go to the polls to cast a vote through the use of force, fraud, threat, menace, intimidation, bribery, reward, or offer of reward[.]"

**6.** We use this word loosely, as appellant's brief referred only to "Md. Op. Att'y Gen. 110 (1995)," which we presume is *80* Md. Op. Att'y Gen. 110 (1995). At argument, counsel referred to "an Ohio case" but did

334, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995), to argue that EL §§ 13–401 and 13–602(a)(9) do not apply to him because he is not a "person" but, rather, a "political consultant." As noted above, however, appellant confuses the question of whether he is a "person" as intended by the legislature—which he plainly is[7]—with the question of whether his speech was protected from the statute by the First Amendment, which it is not.

The *McIntyre* court struck down an Ohio statute that prohibited the distribution of anonymous political literature by all private citizens. 514 U.S. at 348–53, 115 S.Ct. 1511. But appellant was not convicted of being a private citizen who distributed anonymous campaign materials, he was convicted of distributing *funded campaign materials that failed to disclose their source,* a requirement specifically upheld by *Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 366–67, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010):

> Disclaimer and disclosure requirements may burden the ability to speak, but they "impose no ceiling on campaign-related activities," [*Buckley v. Valeo,* 424 U.S. 1, 64, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)], and "do not prevent anyone from speaking," [*McConnell v. Fed. Election Comm'n,* 540 U.S. 93, 201, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003)] (internal quotation marks and brackets omitted). The Court has subjected these requirements to "exacting scrutiny," which requires a "substantial relation" between the disclosure requirement and a "sufficiently important" governmental interest. *Buckley, supra,* at 64, 66, 96 S.Ct. 612 (internal

---

not have a citation for it and was apparently unaware that it was, in fact, the Supreme Court's decision in *McIntyre v. Ohio Elections Comm'n,* discussed above.

7. Black's Law Dictionary defines the word "person" to include a "human being," which appellant does not deny he is. BLACK'S LAW DICTIONARY 525 (2nd pocket ed.1996). Maryland has adopted a broad definition of the term person. *See* Article 1, § 15 (2011 Repl.Vol.) ("Unless such a construction would be unreasonable, the word person shall include corporation, partnership, business trust, statutory trust, or limited liability company."); Maryland Rule 1–202(t) (Defining a person as, *inter alia,* "any individual. . . .").

quotation marks omitted); *see McConnell, supra,* at 231–232, 124 S.Ct. 619.

In *Buckley,* the Court explained that disclosure could be justified based on a governmental interest in "provid[ing] the electorate with information" about the sources of election-related spending. 424 U.S. at 66, 96 S.Ct. 612. The *McConnell* Court applied this interest in rejecting facial challenges to BCRA §§ 201 and 311. 540 U.S. at 196, 124 S.Ct. 619. There was evidence in the record that independent groups were running election-related advertisements " 'while hiding behind dubious and misleading names.' " *Id.,* at 197, 124 S.Ct. 619 (quoting [disclosure *McConnell v. Fed. Election Comm'n,* 251 F.Supp.2d 176, 237 (D.D.C.2003) ("*McConnell I* ")] ). The Court therefore upheld BCRA §§ 201 and 311 on the ground that they would help citizens " 'make informed choices in the political marketplace.' " 540 U.S. at 197, 124 S.Ct. 619 (quoting *McConnell I, supra,* at 237); *see* 540 U.S. at 231, 124 S.Ct. 619.

Whether it is a matter of statutory interpretation or First Amendment protections, the line that appellant attempts to draw between a "person" and a "political consultant" is illusory. Appellant was a "person" for purposes of EL §§ 13–401 and 13–602(a)(9), and it is precisely his role as a consultant *directing the use of campaign funds* that excludes him from the First Amendment's protection of anonymous speech.

## II. Inconsistent Verdicts

 Appellant complains also that we must reverse his conviction because it is legally and factually inconsistent to be convicted of conspiracy but acquitted of the completed crime. Appellant failed to preserve his point for review by objecting prior to the jury's discharge, *McNeal v. State,* 426 Md. 455, 466, 44 A.3d 982 (2012); *Price v. State,* 405 Md. 10, 40, 949 A.2d 619 (2008) (Harrell, J., concurring), but preservation is frankly of little concern here, for appellant is simply wrong. A conviction for conspiracy may lie without conviction of the underlying offense. *Townes v. State,* 314 Md. 71, 75, 548 A.2d 832 (1988); *Grandison v. State,* 305 Md. 685, 758–61, 506 A.2d

580 (1986); *Mitchell v. State,* 132 Md.App. 312, 336, 752 A.2d
653 (2000), *rev'd on other grounds,* 363 Md. 130, 767 A.2d 844
(2001); *Jones v. State,* 8 Md.App. 370, 376–77, 259 A.2d 807
(1969).

### III. Jury Instructions

■ Appellant next argues that the trial court erred when
it instructed the jury, as follows:

> Each charge in this case is a misdemeanor. When a
> person embraces a misdemeanor, that person is a principal
> as to that crime, no matter what the nature of the involve-
> ment. In other words, if you find beyond a reasonable
> doubt an offense charged was committed, and that the
> defendant willfully and knowingly incited, encouraged, aided
> or assisted in the commission of that charged offense, then
> he is guilty of that offense.[8]

■ Under Maryland Rule 2–520(c), the "court may in-
struct the jury, orally or in writing or both, by granting
requested instructions, by giving instructions of its own, or by
combining any of these methods." We have stated that the
"standard of review for jury instructions is that so long as the
law is fairly covered by the jury instructions, reviewing courts
should not disturb them." *Tharp v. State,* 129 Md.App. 319,
329, 742 A.2d 6 (1999). On review, we "must determine
whether the requested instruction was a correct exposition of
the law, whether that law was applicable in light of the
evidence before the jury, and finally whether the substance of
the requested instruction was fairly covered by the instruction
actually given." *Id.*

■ Appellant's argument on this point again demonstrates
a basic misunderstanding of criminal law. He rightly ac-
knowledges that, for misdemeanor crimes, aiders and abettors
are held criminally liable to the same degree as principals.

---

**8.** Appellant's brief does not quote the instructions as given, but instead
 quotes an accomplice liability instruction of unknown origin that does
 not refer to misdemeanors, either as charged or in general.

*See Handy v. State,* 23 Md.App. 239, 250–51, 326 A.2d 189 (1974). But appellant then goes on to argue that he was not charged as an aider or abettor, and so the foregoing instruction should not have been given. This argument confuses the propriety of his charging documents with that of the given instructions, neither of which are in question here. His misdemeanor charges needed not distinguish principal from accessory liability, *see Seward v. State,* 208 Md. 341, 346, 118 A.2d 505 (1955). Because he was criminally liable as an accessory, *Handy,* 23 Md.App. at 250–51, 326 A.2d 189, and the instruction was legally accurate, *Bellamy v. State,* 403 Md. 308, 334, 941 A.2d 1107 (2008), it was given properly and provides appellant no relief from his conviction.

## IV. Expert Testimony

■ Appellant's next assignment of error is the court's refusal to allow him the benefit of expert testimony. Under Maryland Rule 5–702, "[e]xpert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." "In making that determination, the court shall determine (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, (2) the appropriateness of the expert testimony on the particular subject, and (3) whether a sufficient factual basis exists to support the expert testimony." *Id.*

■ The court is vested with wide discretion in determining the admissibility and propriety of expert testimony. *Rollins v. State,* 392 Md. 455, 499–500, 897 A.2d 821 (2006). *Accord Wise v. State,* 132 Md.App. 127, 135, 751 A.2d 24 (2000) ("[The] trial court has broad discretion to rule on the admissibility of expert testimony and its decision to admit or exclude such testimony is rarely reversed."); *Sippio v. State,* 350 Md. 633, 648, 714 A.2d 864 (1998). "[A]buse of discretion occurs where no reasonable person would take the view adopted by the [trial] court or when the court acts without reference to any guiding rules or principles." *Hajireen v. State,* 203 Md.App. 537, 552, 39 A.3d 105 (2012). The "trial court abuses its

discretion when its ruling either does not logically follow from the findings upon which it supposedly rests or has no reasonable relationship to its announced objective." *Ingram v. State*, 427 Md. 717, 726–27, 50 A.3d 1127 (2012).

According to appellant's proffer, his experts "would state that the responsibility for the [robo]call and the authority line was that of the campaign and not of a political consultant such as [appellant.]" By denying him the benefit of expert testimony, appellant argues that "the resulting prejudice to [appellant] was the loss of the testimony which [ ] [would have] set before the jury [the notion] that the authority line failure in the robocall was not his responsibility, but that of the campaign and Mr. Schurick." Appellant's attempt to pass the buck, however, cannot succeed.

Appellant argues that "[the court] made no determination as to the qualifications of the experts, nor whether there was a sufficient factual basis to support the expert testimony." The court, appellant highlights, "reflexively isolated one portion of the requirement under Rule 5–702 and denied the testimony." By process of elimination, it appears that appellant focuses on the court's application of Rule 5–702's second prong, *viz.*, "the appropriateness of the expert testimony on the particular subject." Appellant characterizes political consulting as a new frontier, insinuating that the court denied his use of expert testimony because "historically, judges have denied expert opinions based upon ignorance concerning the principles of other disciplines." [9] But this is merely an unsubstantiated assertion. It does not establish error. We conclude, therefore, that appellant failed to satisfy his burden of identifying the specific manner in which the court abused its discretion. *Worthen v. State*, 42 Md.App. 20, 42, 399 A.2d 272 (1979).

---

9. Contrary to appellant's assertions about the novelty of political consultants in our electoral system, he advises us that "the first political consultants arose from California in the 1930's." We suspect that most courts have become familiar with the species in the last eighty plus years.

■ Although the discussion, *supra*, is sufficient for us to affirm the court's decision with respect to the admissibility of expert testimony, we agree with the State that "[t]he proffered testimony [amounted to] nothing more than the legal conclusions of the [ ] experts concerning the scope of the [appellant's] responsibility under the relevant statutes." Although an expert opinion as to an ultimate issue of fact is admissible pursuant to Maryland Rule 5–704, an expert's opinion on a matter of law is inadmissible. *Waltermeyer v. State*, 60 Md.App. 69, 81, 480 A.2d 831 (1984). Even if appellant was entitled to the benefit of expert testimony, his experts could not have testified, as desired, to the ultimate legal issue of responsibility for the robocall.

### V. The Condition of Probation

■ Lastly, appellant challenges the special condition of his probation prohibiting him from "working in any capacity in election campaigns[,] whether it's in a voluntary status or paid." He argues that "banning him from politics, and thusly his right to make a living is excessive and violates his [c]onstitutional right to free association[,] to contracts[,] and access to political speech."

■ Probation, in the first instance, is a "discretionary matter—a matter of grace, not entitlement." *Wink v. State*, 76 Md.App. 677, 682, 547 A.2d 1122 (1988). Probation is an "act of clemency bestowed by the court." *Hudgins v. State*, 292 Md. 342, 347, 438 A.2d 928 (1982). The "malefactor [ ] may be free as long as he conducts himself in a manner consonant with established communal standards and the safety of society." *Scott v. State*, 238 Md. 265, 275, 208 A.2d 575 (1965). When imposing probation conditions, "[a] judge is vested with very broad discretion in sentencing criminal defendants, and is accorded this broad latitude to best accomplish the objectives of sentencing—punishment, deterrence, and rehabilitation[,]" and is "limited only by constitutional standards and statutory limits." *Poe v. State*, 341 Md. 523, 531, 532, 671 A.2d 501 (1996). However, "a condition to the granting of probation which compels a defendant to give up a

fundamental or constitutional right is not in and of itself unconstitutional or invalid." *People v. Lewis*, 77 Cal.App.3d 455, 463, 143 Cal.Rptr. 587 (1978); *U.S. v. Schave*, 186 F.3d 839, 843 (7th Cir.1999) ("[A] court will not strike down conditions of release, even if they implicate fundamental rights, if such conditions are reasonably related to the ends of rehabilitation and protection of the public from recidivism."). Such a condition "cannot stand [only] if it is not related to the crime of which defendant has been convicted and if it has no reasonable relation to future criminality." *Lewis*, 77 Cal. App.3d at 463, 143 Cal.Rptr. 587.

Although there is a paucity of authority for this proposition in Maryland, reported decisions from our sister states recognize the propriety of prohibiting certain types of employment as a special condition of probation. *See e.g., People v. Caruso*, 174 Cal.App.2d 624, 647, 345 P.2d 282 (1959), *cert. denied*, 363 U.S. 819, 80 S.Ct. 1259, 4 L.Ed.2d 1517 (1960) (finding no abuse of discretion where condition of probation required the defendant to "remain out of the automobile business" even though the "automobile business is the only one which he knows" in car dealership fraud case); *State v. Fox*, 22 Conn. App. 449, 457, 577 A.2d 1111 (1990) ("[T]he special condition prohibiting the defendant from engaging in private real estate work during the period of probation was reasonably related to his rehabilitation in light of the crimes he had committed [extortion through position as town planner] and the public service work he was to perform."); *Morgan v. State*, 285 Ga.App. 254, 260, 645 S.E.2d 745 (2007), *aff'd in part on alt. grounds*, 289 Ga.App. 209, 656 S.E.2d 857 (2008) (owner of animal grooming business convicted of cruelty to animals prohibited from owning or caring for animals as special condition of probation—defendant "failed to carry his burden of showing that the special condition is unreasonable."); *Davis v. State*, 172 Ga.App. 787, 790, 324 S.E.2d 767 (1984) (After conviction of violating state liquor laws, "special conditions of probation reasonably calculated to take [appellant] out of the sale of alcohol business would be authorized."); *State v. Melton*, 364 Mont. 482, 488, 276 P.3d 900 (2012) ("As a general

rule, we will affirm a restriction or condition imposed pursuant to [ ] statutory authority so long as the restriction or condition has some correlation or connection i.e., nexus to the underlying offense or to the offender himself or herself."); *People v. K.D.,* 4 Misc.3d 776, 781 N.Y.S.2d 856, 858 (2004) ("It is clear, beyond peradventure, that the court may proscribe certain employment as a condition of probation."); *State v. Johnston,* 123 N.C.App. 292, 305, 473 S.E.2d 25 (1996), *cert. denied,* 344 N.C. 737, 478 S.E.2d 10 (1996) ("[S]ince the condition imposed upon defendant [that he refrain from working in any "retail establishment that sells sexually explicit material"] was clearly related to and grew out of the offense of disseminating obscenity, we rule that it is not unconstitutional."); *State v. Simpson,* 25 N.C.App. 176, 180, 212 S.E.2d 566 (1975), *cert. denied,* 287 N.C. 263, 214 S.E.2d 436 (1975) (Upholding special condition on employment where, without it, the trial court was concerned that the defendant would "find himself in a position wherein he would more than likely repeat this same offense."); *State v. Graham,* 91 Ohio App.3d 751, 754, 633 N.E.2d 622 (1993) (Prohibiting accountant from providing accounting services as condition of probation for conviction of violating securities laws not unduly restrictive.); *State v. Williams,* 82 Ohio App.3d 70, 74, 611 N.E.2d 443 (1992) (Upholding prohibition on holding public office for five years as special condition to probation on fund misappropriation conviction.).

The federal courts have reached similar conclusions with respect to restricting a defendant's access to political speech and association. *See, e.g., Schave,* 186 F.3d at 843 (restriction on [appellant's] right to association with violent or white supremacist organizations during the period of his supervised release after conviction for supplying weapons to group constitutional.); *Malone v. U.S.,* 502 F.2d 554, 556–57 (9th Cir.1974), *cert. denied,* 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975) ("A convicted criminal may be reasonably restricted as part of his sentence with respect to his associations in order to prevent his future criminality."); *U.S. v. Turner,* 44 F.3d 900, 903 (10th Cir.1995), *cert. denied,* 515 U.S. 1104, 115 S.Ct. 2250, 132 L.Ed.2d 258 (1995) ("Incidental restrictions of First

Amendment rights to freedom of speech and association are permissible if reasonably necessary to accomplish the essential needs of the state and public order.").

Additionally, the United States Supreme Court has upheld similar restrictions on public political activity to protect the integrity of State politics. In *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), the Supreme Court rejected a facial challenge to an Oklahoma statute prohibiting certain state employees from:

> soliciting contributions for partisan candidates, political parties, or other partisan political purposes; becoming members of national, state, or local committees of political parties, or officers or committee members in partisan political clubs, or candidates for any paid public office; taking part in the management or affairs of any political party's partisan political campaign; serving as delegates or alternates to caucauses or conventions of political parties; addressing or taking an active part in partisan political rallies or meetings; soliciting votes or assisting voters at the polls or helping in a partisan effort to get voters to the polls; participating in the distribution of partisan campaign literature; initiating or circulating partisan nominating petitions; or riding in caravans for any political party or partisan political candidate.

413 U.S. at 616–17, 93 S.Ct. 2908.[10]

Maryland's interest in protecting the state from a person convicted of an election offense is at least as strong as Oklahoma's interests in *Broadrick*, which brings the sentencing court's probation conditions within that case's ambit. And

---

10. If there is any question as to whether the scope of the trial court's probation exceeded these strictures or is vague, appellant has not raised it. *See Broadrick*, 413 U.S. at 608, 93 S.Ct. 2908 (statutory prohibitions were "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest"). Appellant presented only the most basic, general attack on the court's sentence, and to accept his arguments as valid is to deny the sentencing court any power to restrict *public* political participation, which is against the holding of *Broadrick*.

importantly, appellant's profession—campaign consultant—is not one subject to State licensing requirements. There being no other legitimate control over his political activities, we leave in place the court's narrowly tailored, rational special condition that appellant not work in "any capacity in election campaigns" during the term of his probation. *See Towers v. State,* 92 Md.App. 183, 194, 607 A.2d 105 (1992).

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

NAZARIAN, DOUGLAS R. M., J., did not participate in the Court's decision to report this opinion pursuant to Md. Rule 8–605.1.