OPINION OF THE COURT
John B. Nesbitt, J.
Defendant is charged with the crimes of criminal possession of marihuana, second degree (Penal Law § 221.25), and unlawfully growing marihuana (Public Health Law § 3382). He moves to suppress the prosecution’s evidence on the grounds that it is the product of an unconstitutional search and seizure.
The operative facts are uncomplicated and largely undisputed. The defendant occupies and maintains residential property known as 3507 Middle Sodus Road in the Town of Lyons. The residence is a one-story, single-family structure with an attached porch facing Middle Sodus Road.
In the late afternoon of October 8, 2015, the State Police recovered 20 potted marihuana plants from the property, as well as equipment ostensibly used to grow marihuana. In connection with the seizure of this evidence, the defendant admitted that he knew of its presence on his property, but that the plants and the equipment were his son’s. The physical evidence, the testimony of State Police personnel regarding the discovery of the evidence, and defendant’s admission regarding his knowledge of the same, will likely constitute a significant part of the prosecution’s case-in-chief at trial.
Defendant argues that this evidence should be suppressed and the prosecution barred from using it at trial. The basis of this claim has nothing to do with the defendant’s guilt or innocence of the two charges, or the general rules regarding relevant, material, and competent evidence. Rather, defendant invokes the judicially created exclusionary rule that bars evidence in criminal cases resulting from unconstitutional searches and seizures. In this case, defendant argues that all of the evidence proving his guilt of the pending charges flows from such an unconstitutional search and seizure. In this case, defendant argues that the State Trooper who discovered the marihuana plants violated the constitutional proscription against searches without judicial warrant when he ventured onto that portion of defendant’s property where the marihuana plants were present in plain view. Whether this is the case is the question now before the court.
*631 The court held an evidentiary hearing for development of a proper record upon which to determine the merits of defendant’s motion to suppress. The only witnesses were two members of the State Police produced by the prosecution. A number of exhibits were offered and received. Based thereon, the court finds as follows. At 1:11 p.m. on October 8, 2015, a mail and/or package delivery person called Wayne County 911 with a complaint of animal maltreatment occurring at 3507 Middle Sodus Road. The caller identified themselves and stopped at that address to make a delivery. The caller said that there were six beagles (two adults and four puppies) in a filthy feces filled pen adjacent the driveway without food and water. No one was home. In addition, there were two dogs in the back of the residence, one tied to a pole and the other to a railing. These dogs were also without food or water, with “feces everywhere.” The caller said that she gave the dogs water and “they acted like they hadn’t had any for awhile” (People’s exhibit K).
At approximately 1:30 p.m., Trooper James Buonaugurio received a dispatch from the 911 center to investigate the animal control complaint regarding 3507 Middle Sodus Road. Middle Sodus Road runs north and south through the Towns of Lyons and Sodus between Maple/South Geneva Road to the west and State Route 14 to the east. The property at issue sits on the west side of Middle Sodus Road. There is a driveway into the property about 80 to 100 feet long. At the end of the driveway and to the left (south) sits the residence. The Trooper arrived at the property shortly after receiving the dispatch and drove about two thirds of the way up the driveway. Looking towards his left, the Trooper could see the residence. Looking towards his right he could see a dog pen next to a large trailer. The Trooper exited his vehicle and immediately heard dogs barking from the dog pen as well as from behind the house. The Trooper first inspected the dog pen to the right of the driveway. He found “no food, no water, large amount of feces throughout the pen and all six Beagles” (tr at 9). It was “warm” outside, and
“[t]he dogs appeared to be in a form of distress, in my [the Trooper’s] opinion, not only [not] having any food or water or adequate shelter given that the day was a warmer hot day for October, like I said, no food or no water and no shade to cool the dogs down” (tr at 23).
*632 The Trooper then walked over and onto the porch and knocked on the door of the residence. There was no response. Still hearing barking dogs in the backyard, the Trooper walked around to the back of the house and saw a dog leashed to an umbrella style clothespole. The Trooper testified
“that the dog had a metal bowl at a distance, that it was not reachable for the dog to get to, and a plastic bowl that was closer to the dog but still hard for the dog to reach. The dog had wrapped itself around the pole with his leash from running around in circles. Both bowls had no food and no water” (tr at 12).
At the same time as the Trooper saw the dog leashed to the clothespole, he saw near the back of the residence several individually potted plants that his training and experience indicated to be marihuana. Some of these plants “were as tall as the roof” of the residence (tr at 16). After noticing the marihuana plants, the Trooper saw another dog leashed to a pole located on the residence’s back patio. There was an empty metal bowl by the dog and scattered feces, together with open bags of fertilizer and propane tanks. The Trooper heard more barking coming further into the backyard. He walked to the back corner of the yard where this barking was coming from and found another dog in a dog pen, with no food or water in the two dishes in the pen.
There was an aboveground swimming pool in the backyard. In ascertaining the location and condition of the dogs in the backyard, the Trooper noticed that the pool was empty of water and instead contained five large marihuana plants individually planted in gallon buckets. There were also similarly potted marihuana plants outside the pool on the side facing away from the residence. In total, the Trooper found 14 marihuana plants in the backyard, and nine dogs on the property without food or water.
At some point during his investigation, the Trooper called State Police Investigator John Stubbe regarding the marihuana plants, and called the animal control authorities regarding the dogs.
Based upon the investigation of the Trooper and information provided by the defendant and his son, who appeared at the property later, Investigator Stubbe secured a search warrant for the premises, including the residence, which was executed around 4:30 p.m. In the residence, additional marihuana plants *633 were recovered, as well as equipment allegedly employed to grow the plants.
The merits of the defendant’s motion to suppress rests upon the undisputed fact that Trooper Buonaugurio had no view of the marihuana plants until he walked around to the back of the house (tr at 41). Defendant claims that the Trooper’s entry into the backyard was contrary to the identical provisions of the Fourth Amendment of the Federal Constitution and article I, § 12 of the New York Constitution stating that
“[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.”
In the present context, it is textbook law that
“[t]he state has the burden of overcoming the presumption that a warrantless search is unreasonable. Warrantless searches and seizures are per se unreasonable unless they fall within one of the recognized exceptions to the warrant requirement. [For example,] [t]o establish that warrantless entry was proper, the people are required to show either that the entry did not offend the Fourth Amendments of the United States Constitution or New York’s analogous provision or that probable cause existed for the entry and that a recognized exception to the warrant requirement applies . . . Once the people have met their burden of going forward to demonstrate the legality of the police conduct, the burden shifts to the defendant to prove the illegality of the search or seizure” (31 NY Jur 2d, Criminal Law: Procedure § 427 [2016]).
At the outset, it is clear that the search of the backyard of the defendant’s residence implicates Fourth Amendment protections.
“The Fourth Amendment protects persons against unreasonable searches and seizures of their ‘persons, houses, papers, and effects.’ Both a home and the home’s curtilage—i.e., ‘the area outside the home itself but so close to and intimately connected with the home and the activities that normally go on there that it can reasonably be considered part *634 of the home’—are within the scope of the Fourth Amendment’s protection. United States v. Shanks, 97 F.3d 977, 979 (7th Cir.1996) (quoting United States v. Pace, 898 F.2d 1218, 1228 [7th Cir.1990]). Thus, the government cannot search this area absent a warrant (or some exception to the warrant requirement).” (Siebert v Severino, 256 F3d 648, 653-654 [7th Cir 2001].)
Given that the backyard search by Trooper Buonaugurio occurred without a warrant, the People are required to establish that the search was reasonable and that no warrant was required under the circumstances of this case. To be sure, the marihuana was in plain view, as argued by the People, but that assumes the antecedent question whether the Trooper was in a lawful vantage place in order to make his “plain view” observations.
At the outset, it cannot be argued, and defendant does not argue, that his Fourth Amendment rights were infringed by the nature of the Trooper’s response to the animal abuse complaint before the Trooper went around the residence into the backyard. In People v Kozlowski (69 NY2d 761 [1987]), the defendant challenged his convictions for driving while intoxicated and leaving the scene of a property damage accident on the grounds that his statements to police at his home were the result of a warrantless, nonconsensual entry into his home in order to make an arrest. Said the Court:
“Nor were defendant’s constitutional rights violated when the officer investigating the reported traffic incident entered upon defendant’s property, knocked on the front door, and asked questions which defendant chose to answer. The police officer reached defendant’s front door by the means defendant had made available for public access to his house, and did not intrude into any area in which defendant had a legitimate expectation of privacy. Absent evidence of intent to exclude the public, the entryway to a person’s house offers implied permission to approach and knock on the front door. Thus, where (as here) the police utilized an unobstructed access to defendant’s home for the purpose of making inquiry, no warrant was required by the State or Federal Constitution” (id. at 763 [citations omitted]).
*635 The location of the dog pen with the six beagles adjacent the driveway to the residence belies any expectation of privacy to that area of the defendant’s property. As stated in People v Crapo (103 AD2d 943, 943 [3d Dept 1984], affd 65 NY2d 663 [1985]):
“The record establishes no violation of defendant’s rights under the Fourth Amendment. The officer’s action in walking up defendant’s driveway to the door of his garage and then looking through the garage door window was no more intrusive an event than ordinarily occurs during the daily . . . life in an urban neighborhood by, e.g., a paperboy, garbage collector or door-to-door salesman. Clearly, without some outward manifestation that trespasses of this nature, even upon the curtilage of his property, were forbidden, defendant had no reasonable expectation of privacy that was infringed by the arresting officer” (citation omitted).
We now come to the more difficult issue whether, based upon the circumstances, the Trooper was privileged to venture into the defendant’s backyard. Clearly, defendant had an expectation of privacy to that area as opposed to the front yard. Absent a warrant or circumstances excusing the same, the Trooper had no right to enter that area and any evidence of criminality discovered as a result would have to be suppressed. There was no warrant, thus the prosecution must demonstrate that none was required.
In this case, there are three factors that can be offered to justify the warrantless entry into the defendant’s backyard. First, the 911 caller stated that she witnessed mistreated dogs, and mentioned that one or more of those dogs were in the backyard. Second, the Trooper himself saw dogs in the front yard that appeared distressed due to lack of food, water, and shelter. Third, the Trooper heard dogs barking from the backyard. Based upon these factors, the court finds that the backyard intrusion was reasonable and no warrant was required.
A warrantless search otherwise unlawful can be sustained under the emergency doctrine, the elements of which are:
“(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.
“(2) The search must not be primarily motivated by intent to arrest and seize evidence.
*636 “(3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched” (People v Dallas, 8 NY3d 890, 891 [2007], quoting People v Mitchell, 39 NY2d 173, 177-178 [1976]).*
The animating rationale behind the emergency doctrine may be found in People v Gallmon (19 NY2d 389, 394 [1967]), where police officers were called to a rooming house to investigate a disturbance. The night manager admitted the officers into the room where the noise originated. The officers saw the defendant in the room in the possession of narcotics instruments. The Court of Appeals, speaking through Judge Brietel, found that the statute authorizing forcible entry for the purpose of making an arrest only after notice of office and purpose was not applicable in view of the investigatory purpose of the entry. Said the Court:
“Perhaps it is of . . . greatest significance to this case that the police officer’s entry was pursuant to his general obligation to assist people in distress—a purpose often independent of considerations affecting the criminal law. Police are expected and often required to investigate the unquelled crying of babies, sounds and blows in what turn out to be matrimonial disputes, to assist in child deliveries, and to resolve the causes of unusual sounds suggesting harm to persons, animals and property. Their functions are just not confined to criminal law enforcement, a matter frequently of great concern to those seeking to make limited police resources more effective. In this context it has been suggested that an officer’s entry is based neither on consent nor license and that . . . the refusal of consent may be of no avail” (id. at 394 [citations omitted]; see also People v Gatti, 29 AD2d 617 [4th Dept 1967]).
*637 The application of the emergency doctrine to distressed animals has received some judicial attention. In Mallory v City of Riverside (35 F Supp 3d 910, 930-931 [SD Ohio 2014]), the District Court noted:
“This Court has yet to consider the applicability of the exigent circumstances exception as it relates to animals, though it recognizes that several other courts have faced that issue. Several courts have recognized that the need to protect life, to render medical aid, and to give assistance to those who are seriously injured or threatened with injury extends to the life and health of animals. See Shapiro v. City of Glen Cove, 236 Fed.Appx. 645 (2nd Cir.2007) (circumstances known to the officers, that dogs were kept in a partially renovated uninhabited house that lacked electricity and heat, suggested that the dogs were in urgent need of assistance, thus permitting a warrantless search and seizure), citing Siebert v. Severino, 256 F.3d 648, 657 (7th Cir.2001) (suggesting that ‘[e]xigent circumstances may justify warrantless seizure of animals’); DiCesare v. Stuart, 12 F.3d 973, 977-78 (10th Cir.1993) (same); Leathem v. United States, 1997 WL 547958, 1997 U.S.App. LEXIS 23305 (9th Cir.1997) (the exigent circumstances exception permitted immediate action to save the animals from severe illness and death as a result of lack of care and nutrition); Recchia v. City of Los Angeles Department of Animal Services, 2013 WL 5703127, *5, 2013 U.S. Dist. LEXIS 150326, *13 (C.D.Cal.2013) (Given the conditions of the animals [birds] and the unhygienic state of their housing, ‘exigent circumstances existed for the officers to search for and seize the suffering animals’); People v. Rogers, 184 Misc.2d 419, 708 N.Y.S.2d 295 (N.Y.App.Term 2000) (extending exigent circumstances to protect animals in danger, in this case the rescue of animals in a pet store in need of medical attention).”
This court’s own research reveals that several other courts have applied the emergency doctrine to validate (or not) war-rantless searches and/or seizures of animals. A by no means exhaustive list includes Munoz v Umatilla County (2015 WL 1004418, 2015 US Dist LEXIS 27580 [D Or, Mar. 5, 2015, No. 2:11-cv-00956-SU]), State v Dicke (258 Or App 678, 310 P3d 1170 [2013]), Mahnke v Garrigan (2010 WL 2634618, 2010 US *638 Dist LEXIS 64134 [WD Wis, June 28, 2010, No. 09-cv-408-wmc]), Morgan v State (289 Ga App 209, 656 SE2d 857 [2008]), and Brinkley v County of Flagler (769 So 2d 468 [Fla Dist Ct App 2000]).
The Trooper in this case from a lawful vantage point saw six beagles (four being puppies) in a pen without food, water, or shelter, on a warm October day. Given the accumulation of feces, this situation may have existed for some time. In the Trooper’s opinion, the dogs appeared to be suffering, although he did not identify any physical manifestation of distress except the barking. Nevertheless, the situation was already dangerous to the health of the beagles, whose health might have been already compromised, but certainly would be if the conditions continued. Based on those facts, the Trooper could reasonably infer from the barking coming from the backyard that those dogs may be in a similar, or potentially more serious, condition. The Trooper was thus authorized to go to the backyard to ascertain the situation in order to determine whether immediate action was necessary to alleviate needless suffering or avoid irremediable harm to the dogs.
Accordingly, defendant’s motion to suppress is denied. The court also finds that the warrant to search the defendant’s premises and seize such property as described in the warrant was proper.

 Stated differently,
“Under the emergency doctrine, closely related to the exigent circumstances exception, police may execute a warrantless search in limited circumstances presenting an immediate danger to life or property as opposed to seeking a criminal suspect or preserving evidence of a crime. Pursuant to the doctrine, the police are not required to obtain a search warrant provided that they have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property” (31 Carmody-Wait 2d § 173:374 [2016]).